UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CASE NO. 3:05-CR-59-R

UNITED STATES OF AMERICA,                                    PLAINTIFF

v.

BYRON KEITH PERKINS,                                        DEFENDANT

## MEMORANDUM OPINION

This matter comes before the Court on Defendant Byron Perkins's Motion to Set Aside Plea of Guilty (Docket #54).  The government has filed a response (Docket #55).  Defendant has file a memorandum in support of his motion (Docket #79).  The government has filed a response to the memorandum (Docket #77), to which Defendant has replied (Docket #80).  This matter is now ripe for adjudication.  For the reasons that follow, Defendant's motion is DENIED.

## BACKGROUND

Defendant Byron Perkins was arrested on a criminal complaint on April 14, 2005.  A federal grand jury subsequently returned two indictments against Defendant.  On May 2, 2005, Defendant was indicted for possessing marijuana with the intent to distribute, being a felon in possession of a firearm and using or carrying a firearm in furtherance of a drug trafficking offense.  All of these charges stemmed from Defendant's conduct on March 12, 2005.  On July 6, 2005, a grand jury returned a superceding indictment, adding charges of robbery and using or carrying a firearm in furtherance of a drug trafficking offense, stemming from Defendant's involvement in a March 16, 2005 robbery.  Defendant's girlfriend, Lea Ann Howard, was indicted in state court for her involvement in the March 12 and March 16 offenses.  Laura Wyrosdick, of the Federal Public

Defender's Office, was appointed to represent Defendant.

At the time of his arrest, Defendant's son Destin was in the advanced stages of renal failure, and was in need of an immediate kidney transplant. Defendant was a candidate for the donation, and had expressed a desire to donate his kidney to his son. Wyrosdick was in contact with Brian Butler, the Assistant United States Attorney prosecuting the case, and advised him of Destin's condition. Butler agreed that Defendant should be tested to determine whether he was an appropriate donor for his son. A blood test was arranged to determine whether Defendant was a match for his son. The test were rendered unnecessary when Defendant's ex-wife donated a kidney to Destin, eliminating the need for determining if Defendant was a suitable donor.

On November 18, 2005, Defendant entered into a plea agreement with the government. Defendant agreed to plead guilty to Counts 1, 2, 4, and 5 of the superceding indictment. The government agreed to recommend a fine and sentence of imprisonment at the low end of the applicable sentencing guidelines range, a three level reduction for acceptance of responsibility, and to dismiss Count 3, which alleged a violation of 18 U.S.C. § 924(c). A change of plea hearing was held before Magistrate Judge Dave Whalin.

Around the time Defendant entered his guilty plea, Destin was again in need of a kidney transplant. The kidney donated by Defendant's ex-wife had failed. Defendant states that he told Wyrosdick that he felt pressure to accept the government's plea offer so he could be released to help his son by donating his kidney. He claims that Wyrosdick told him that Butler would only allow him to be released to help his son if he pled guilty first. He further claims that his attorney advised him that the Court would not accept his change of plea if he stated on the record that he felt pressured to accept the offer.

Two months after the change of plea hearing, the Judge Whalin entered a Temporary Order of Release on January 16, 2006.  The order authorized Defendant to be released for testing to see if Defendant was a potential kidney donor for his son.

On January 23, 2006, Defendant was released from the Oldham County Jail for the second phase of the testing.  The order required Defendant to surrender himself to the Marshal Service on January 24, 20006, no later than 4:30 p.m.  However, Defendant did not show up for the testing to see if he could be a kidney donor for his son.  Defendant also did not turn himself into the Marshal Service.

Fifteen months later, on April 25, 2007, Defendant and Howard were found and arrested in Puerto Vallarta, Mexico.  Upon being arrested, Perkins made it know to the Marshal Service that he intended to withdraw his guilty plea.  Perkins formally moved to change his plea on July 23, 2007.

Perkins requests to withdraw his guilty plea under Fed. R. Crim. P. 32(d).  The Court held hearings on this matter on April 30, 2008, and May 15, 2008.  The Court heard the testimony of Laura Wyrosdick and Defendant.  The Court also heard the testimony of Robert Turner and Chris Shrader, two inmates who were being held at the Oldham County Jail with Defendant around the time Defendant entered his change of plea.  Finally, the Court listened to recordings of several phone conversations made by Defendant around the time he pled guilty.

### STANDARD

Federal Rule of Criminal Procedure 11(d)(2)(B) states that a defendant may withdraw a guilty plea "after the court accepts the plea, but before it imposes sentence if . . . the defendant can show a fair and just reason for requesting the withdrawal."  "The purpose of Rule 11(d) is to

allow a 'hastily entered plea made with unsure heart and confused mind to be undone, not to allow a defendant to make a tactical decision to enter a plea, wait several weeks, and then obtain a withdrawal if he believes he made a bad choice in pleading guilty.'" *United States v. Dixon*, 479 F.3d 431, 436 (6th Cir. 2007) (citing *United States v. Alexander*, 948 F.2d 1002, 1004 (6th Cir. 1991)).  "A defendant does not have an absolute right to withdraw a guilty plea and bears the burden of proving that he is entitled to withdraw his guilty plea." *United States v. Ellis*, 470 F.3d 275, 280 (6th Cir. 2006).

The Sixth Circuit has employed seven factors in examining whether a defendant's motion to withdraw a guilty plea should be granted.  These factors are general and nonexclusive, and include: "(1) the amount of time that elapsed between the plea and the motion to withdraw it; (2) the presence (or absence) of a valid reason for the failure to move for withdrawal earlier in the proceedings; (3) whether the defendant has asserted or maintained his innocence; (4) the circumstances underlying the entry of the guilty plea; (5) the defendant's nature and background; (6) the degree to which the defendant has had prior experience with the criminal justice system; and (7) potential prejudice to the government if the motion to withdraw is granted." *Id.* (citing *United States v. Bashara*, 27 F.3d 1174, 1181 (6th Cir. 1994).

## DISCUSSION

Defendant focuses on the fourth factor enumerated by the Sixth Circuit, the circumstances underlying the entering of Defendant's guilty plea.  Defendant argues that he was pressured into pleading guilty by his desire to help both Destin and Howard.  He claims he wanted to help Destin by donating his kidney, and wanted to help Howard by resolving the state charges against her.  He argues that the pressure from his desire to help Destin and Howard

4

rendered his guilty plea involuntary.

A guilty plea is valid if it is entered knowingly, voluntarily, and intelligently by the defendant. *Brady v. United States*, 397 U.S. 742, 748 (1970). A district court, in accordance with Rule 11 of the Federal Rules of Criminal Procedure, must verify that "the defendant's plea is voluntary and that the defendant understands his or her applicable constitutional rights, the nature of the crime charged, the consequences of the guilty plea, and the factual basis for concluding that the defendant committed the crime charged." *United States v. Webb*, 403 F.3d 373, 378-79 (6th Cir.2005). Defendant has not argued that he did not understand his constitutional rights, the nature of the crime charged, the consequences of the guilty plea, and the factual basis for concluding that Defendant committed the crime charged. Defendant's sole argument is that his guilty plea is invalid because he only entered the guilty plea under duress.

The Court finds that Defendant's guilty plea was knowing, intelligent and voluntary. When Judge Whalin took Defendant's plea, he carefully question Defendant to ensure that Defendant voluntarily waived his constitutional rights. He asked Defendant if any promises were made other than those contained in the plea agreement, and asked if anyone forced Defendant in any way to plead guilty. Defendant responded "no" to both question. More importantly, based on the evidence presented, the Court finds that Defendant's allegations of duress or coercion are not credible.

Defendant argues that his desire to help Howard was a material part of the plea agreement to him. While it may be true that Defendant desired to help his girlfriend, there is nothing before the Court that indicates that Howard's charges were actually a part of the plea bargain. Wyrosdick testified that she warned Defendant that Howard's interests did not

necessarily align with the interests of Defendant, and that she warned Defendant not to trust Howard.  Therefore, any action by Defendant that aided Howard at his own expense would have been against the advice of his own attorney.

Additionally, Defendant does not allege that the government actually promised to help Howard in exchange for Defendant's guilty plea.  Instead, he merely alleges that he desired to have such a promise be part of his plea agreement.  There is nothing in the record which would indicate that the government attempted to use any charges against Howard to pressure Defendant into pleading guilty.  The charges against Howard were not brought in federal court by the United States Attorney's Office, but were instead brought in state court.  There is nothing in the record that indicates that the government offered to help Howard with her state charges, or that the state charges were dismissed as a result of Defendant's change of plea.  There is also nothing in the written plea agreement concerning any charges against Howard.  The Court finds that any desire Defendant had to help Howard with her state charges in return for pleading guilty did not render Defendant's plea involuntary when it is clear from the record that the government in no way implied that such a consideration was a part of the plea bargain.  There is no evidence that would lead the Court to conclude that Defendant actually believe that his pleading guilty would in any way resolve the charges against Howard.  Furthermore, the Court did not find Defendant's testimony on this matter to be credible.

As for Defendant's argument that he was pressure into pleading guilty based on his desire to help his son, Defendant testified that he was told by Wyrosdick that the Butler would only allow him to be released if he first pled guilty.  However, Wyrosdick testified that no such threat was made.  On the contrary, Wyrosdick testified that Butler was concerned for Destin, and

6

repeatedly stated that he would not do anything to endanger Destin's health.

After examining the record and considering the relevant testimony, the Court finds Defendant's allegation that he was told that he must plead guilty before he would be released to help Destin lacks credibility.  First, the record demonstrates that the government was working with Defendant to obtain his release from custody shortly after his arrest.  It was only when Destin's mother donated her kidney that the government no longer agreed to Defendant's release.  There is also nothing in the plea agreement concerning his release.  The Court does not believe that Defendant based his guilty plea on an unspoken agreement that he would be released from custody after pleading guilty.   During his change of plea hearing, Defendant was asked if any promises were made other than those contained in the agreement, and Defendant responded "no."

In attempting the explain why he is contradicting the statements he made under oath at the change of plea hearing, Defendant alleges that his attorney advised him that the Court would not accept his change of plea if he stated on the record that he was feeling pressure into accepting the offer.  Wyrosdick, on the other hand, testified that she told Defendant that the decision to plead guilty was his and his alone, and that it must be unrelated to any other concerns.  The Court finds Wyrosdick's testimony to be credible.  Wyrosdick was emphatic in her testimony that she told Defendant several times that the guilty plea had nothing to do with his release from custody to help his son, and nothing to do with the charges against Howard.  She told Defendant that the plea has nothing to do with anything other than whether he wants to resolve his case, because at some point he was going to go in front of a judge under oath and admit to the charges against him.

7

Wyrosdick testified that after the plea colloquy, Defendant commented that after pleading guilty, he would now be able to help his son.  Wyrosdick states that this upset her, because she had discussed with Defendant before the change of plea hearing that the guilty plea was unconnected to Defendant's release.  For this reason, Wyrosdick wanted to clarify to Defendant, on the record, that Defendant's change of plea had nothing to do with Defendant's son's medical condition.  Defendant, while under oath, agreed that his decision to plead guilty had nothing to do with his son's health.

In any event, Defendant's contention that he was under duress based on his concern for his son is belied by his subsequent actions. Even if the Court believe that despite his attorney's efforts, Defendant were under the misapprehension that his guilty plea and his release from custody were in some way connected, Defendant's argument that he was under such duress as to render his plea involuntary is not credible.  Defendant's duress is based on claims that his desire to help his son in effect forced him to plead guilty.  However, it is difficult to argue that Defendant was coerced into pleading guilty by his desire to donate his kidney to his son, when ultimately he did not attempt to donate the kidney.  He did not even make it to the second round of testing to see if he was a compatible donor before he disappeared to Puerto Vallarta.

Defendant attempts to make some showing of actual duress by arguing that he did not receive any benefit from the guilty plea.  He argues that because he turned down plea agreements with the government offering a recommendation of 31 years and 25 years, he must have been under duress when he accepted a plea agreement in which the government recommended 37 years.  He maintains that his decision to plead guilty was for the benefit of Destin and Howard, rather than his own benefit.

However, the Court notes that Destin did not benefit from Defendant's guilty plea, because Defendant did not complete the tests necessary to donate his kidney.  Nor could the Court find that Howard received any benefit from Defendant's guilty plea.  In addition, Defendant did actually receive a benefit from the plea agreement.  The government agreed to drop a § 924(c) charge, which would have increased Defendant's mandatory minimum sentence by 25 years.  While Defendant argues that he did not believe this was to his benefit because based on his family history he would not live long enough to survive even 25 years in prison, it is still more benefit than Destin or Howard received from the plea bargain.

Therefore, based on the above analysis, the Court finds that Defendant's change of plea was voluntary, and was not rendered invalid by duress or coercion.  As such, the Court cannot find that the circumstances surrounding the guilty plea weigh in Defendant's favor.  On the contrary, based on Defendant's failure to abide by the conditions of his release, the Court finds that this factor weighed heavily against Defendant.

Nor does the consideration of the other factors enumerated by the Sixth Circuit lead the Court to find that Defendant has presented a fair and just reason to withdraw his guilty plea. None of the other factors weigh in favor of granting Defendant's motion, and many weigh heavily against Defendant.

The amount of time that passed between the plea and the motion for withdraw weighs heavily against Defendant.  Eighteen months passed between the change of plea hearing in November 18, 2005, and when Defendant filed his motion to withdraw his plea in July 23, 2007. This is a considerable length of time, making this factor a significant consideration in the Court's analysis.  *See United States v. Quinlan*, 473 F.3d 273, 278 (6th Cir. 2007) (noting that shorter

9

periods of time than 13-month delay in that case have been found to be most significant factor in denying a defendant's motion to withdraw a guilty plea).

Nor has Defendant offered a legitimate reason for the delay.  He testified that he told his attorney that he was cheated by the plea agreement shortly after the change of plea hearing. However, in Defendant's subsequent appearances before the Court, he made no indication of his dissatisfaction with his guilty plea.  In addition, Defendant has made no effort to explain the 15-month delay between telling his attorney he was upset by the plea bargain, and his telling his new attorney he desired to withdraw his plea.  Therefore, the Court finds that this factor weighs strongly against Defendant.

The Court must also consider whether Defendant has asserted his innocence.  The government argues that Defendant did not assert his innocence until he was in custody 15 months after his guilty plea.  Additionally, the government points to statements made by Defendant at the time of his arrest which confirmed his involvement with the charged offenses. At the hearing, Defendant admitted to making those statements.  However, Defendant argues that he asserted his innocence to at least some of the charges.  Defendant protested in the recorded phone conversations with Howard that he was innocent of at least some of the charges to which he pled guilty.

However, the private protestations of innocence as to some of the charges do not outweigh Defendant's public admission of guilt, under oath, of all of the charges at the change of plea hearing.  There is nothing in the transcript of the change of plea hearing which indicates that Defendant hesitated in admitting his guilt.  As Defendant stated in his recorded telephone conversations, he was required to publicly admit to his guilty several times during the change of

10

plea hearing.  "This . . . is a far cry from the 'vigorous and repeated protestations of innocence' that would support a motion to withdraw a guilty plea.'" *Dixon*, 479 F.3d at 437 (citing *United States v. Baez*, 87 F.3d 805, 809 (6th Cir. 1996).  Given this, the Court will not weigh this factor in favor of granting Defendant's motion.  *See United States v. Lineback*, 330 F.3d 441, 444 (6th Cir. 2003) (holding that the district court does not abuse its discretion in weighing assertion of innocence factor against the defendant when the defendant admitted "that he did engage in the conduct that was set forth in the government's plea colloquy.").

Defendant's nature and background do not weigh in favor of granting Defendant's motion.  Defendant was 37 years at the time of his change of plea hearing, and has received his GED.  His attorney testified that she thought Defendant was a very intelligent individual.  It is clear from the record and the Court's own observations of Defendant that he able to understand the magistrate judge's warnings concerning the consequences of a guilty plea.

Defendant's substantial previous experience with the criminal justice system weigh heavily against Defendant.  In 1998, Perkins pled guilty to in federal court for bank robbery and using and carrying a firearm.  He was sentenced to seventy-six months imprisonment.  It is evident from the record that Defendant was aware of the consequences of pleading guilty in the federal court system.  This was not a hastily entered plea, and Defendant did not plead guilty with an unsure heart or confused mind.  Defendant knew the consequences of pleading guilty, and made an intelligent determination to waive his right to a trial by jury.  *See Quinlan*, 473 F.3d at 278 (when a district court examines defendant's experience with the criminal justice system it used to determine if he understood the consequences of the plea agreement).

Finally, the Court must consider any prejudice to the government caused by the delay.

11

While the government has raised no specific arguments beyond the prejudice inherent in a18-month delay between Defendant's guilty plea and his request to withdraw that plea,  Defendant is still not entilted to withdraw his guilty plea in light of the above analysis.  Based on the weighing of all the relevant factors, the Court finds that Defendant has not provided a fair and just reason to withdraw his guilty plea.  As such, Defendant's motion must be denied.

**CONCLUSION**

For the above reasons, Defendant's Motion to Set Aside Guilty Plea is DENIED.

An appropriate order shall issue.